IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF HAWAII, et al.,<br>Plaintiffs-Appellees,<br><br>v.<br><br>DONALD TRUMP, et al.,<br>Defendants-Appellants. | No. 17-15589 |

**DEFENDANTS-APPELLANTS' RESPONSE TO MOTION TO SUPPLEMENT THE RECORD**

In an effort to shore up their standing, plaintiffs seek to supplement the record with facts regarding prospective students at the University of Hawaii. This new evidence fails to remedy the fundamental defects in Hawaii's standing for three reasons. *First*, standing is judged as of the time the operative complaint is filed, and Hawaii's new evidence fails to identify any non-speculative injury that existed at the time of the amended complaint. Hawaii has failed to identify any prospective student with concrete plans to travel to the University during the 90-day period identified in Section 2(c) of the Order, and even if that date were to be extended in the future to bar entry on the part of any prospective student, that bar would result from Hawaii's decision to file its amended complaint and seek an injunction barring enforcement of the order. Self-inflicted injury does not create Article III standing. *Second*, Hawaii's new declaration does not assert that any of the students in question

were otherwise eligible for visas and would have sought but been denied a Section 2(c) waiver; consequently, it does not cure the ripeness problem inherent in Hawaii's reliance on prospective students. *Third*, Hawaii's new declaration does nothing to overcome the independent prudential-standing barrier to its suit challenging the (speculative) denial of visas to aliens abroad. The declaration does not demonstrate that any of the prospective students in question—aliens who are seeking admission to the United States—have any pertinent constitutional or statutory rights, or that Hawaii may assert any such rights of its own. For these reasons, Hawaii's new declaration does not identify any basis on which Hawaii has standing to bring this action.

## STATEMENT

Plaintiffs filed their amended complaint challenging the new Executive Order, R64, along with a motion for a temporary restraining order, R65, on March 8, 2017. On the same date, plaintiffs resubmitted the declaration of Risa E. Dickson, see R66-7, along with a supplemental declaration from Ms. Dickson, *see* R66-6. The original declaration discussed students and faculty who are already present at the University, *see* R66-6, ¶¶ 9-12, and who therefore are not affected by the new Executive Order, as well as prospective students from "other countries" who allegedly might be deterred from attending the University. *See* R66-6, ¶ 14. The supplemental Dickson declaration attested that, although "it is too soon to determine the full impact" of the

new Order, the University anticipated that recruitment of students and faculty from the six countries identified in Section 2(c) of the Order "may be impacted." R66-7, ¶ 8.

In their district-court papers, defendants argued that this evidence was inadequate to support Article III standing, but the district court disagreed, holding that Hawaii had standing because "prospective students who are without visas * * * will not be able to travel to Hawaii to attend the University" and "[a]s a result, the University will not be able to collect the tuition that those students would have paid." R219 at 18.

Plaintiffs now move to provide yet another declaration from Ms. Dickson. This second supplemental declaration asserts that, as of April 20, 2017, 11 graduate students, each from one of the six identified countries, had been offered admission to the University, and that 21 additional students from those countries were still being considered for admission. Second Supp. Dickson Decl., ¶¶ 2-3. This declaration also states that, "as of May 12, 2017," "at least three students from the six targeted countries have accepted offers of admission to the University" for the coming academic year, two of whom are required to report to the University between August 1 and August 10, 2017. *Id.* ¶¶ 4, 7.

## ARGUMENT

For multiple reasons, this latest Dickson declaration fails to remedy any of the fundamental defects that preclude Hawaii from bringing this action.

1. "[S]tanding is determined as of the date of the filing of the complaint," and as a result, "[t]he party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2015), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010); *accord Davis v. FEC*, 554 U.S. 724, 732-33 (2008); *Keene Corp. v. United States*, 508 U.S. 200, 207-08 (1993); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992); *see Summers v. Earth Island Inst.*, 555 U.S. 488, 495 n.* (2009) (refusing to consider, in evaluating plaintiffs' standing, an affidavit that plaintiffs submitted to district court "[a]fter the District Court had entered judgment, and after the Government had filed its notice of appeal," because "if [the plaintiffs] had not met the challenge to their standing at the time of judgment, they could not remedy the defect retroactively").

The second supplemental Dickson declaration is irrelevant to Hawaii's standing because it does not purport to establish facts in existence on the date plaintiffs' filed their operative complaint, March 8, 2017. Instead, it appears to describe events that occurred after the complaint was filed. The declaration states that on April 20, 2017, an online news article reported that 11 graduate students had

received offers of admission, and that, "[s]ince this on-line story was posted, as of May 12, 2017," some of those students "have accepted their respective offers," and therefore are now required to report to the University before August 10. Second Supp. Dickson Decl. ¶¶ 3-4. Those asserted developments have no bearing on Hawaii's standing to sue at the time the operative complaint was filed.

Plaintiffs still have identified no prospective student with concrete plans to travel to the University during the 90-day period identified in Section 2(c) of the new Order. See Appellants' Br. 23; Reply Br. 6. That period was supposed to begin on March 16, 2017, and extend until June 14, 2017—well before the two students identified in the second supplemental Dickson declaration are scheduled to report to the University in August 2017, see Second Supp. Dickson Decl. ¶ 7. As a result, plaintiffs remain unable to show that, at the time of their complaint, Section 2(c) was likely to cause any prospective student abroad to be unable to enter the country to attend the University. Causation, of course, is another element of Article III standing.[1]

Plaintiffs argue (at 4) that the Order will affect these students because, "if the Order goes into effect anytime between now and August 10, it will impede the ability

[1] Plaintiffs' response brief suggested that eleven individuals from the countries in question had been admitted to the University, *see* Appellee Br. 18, but did not say that those alleged admissions had occurred as of the date of the filing of the amended complaint.

of these students to get the visas they will need to begin classes." But the delayed commencement of Section 2(c)'s 90-day suspension of entry was not the result of the Order. It was caused by plaintiffs themselves, who filed this suit and obtained injunctive relief preventing that temporary suspension from beginning. The law is clear that self-inflicted injury fails the redressability element of the Article III standing test. See, *e.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013); *McConnell v. FEC*, 540 U.S. 93, 228 (2003); *Habeas Corpus Resource Center v. U.S. Dep't of Justice*, 816 F.3d 1241, 1251 (9th Cir. 2016).

The cases plaintiffs cite (at 2) do not help them. *Lowry v. Barnhart*, 329 F.3d 1019 (9th Cir. 2003), explained that the "general rule" barring consideration of evidence not presented to the district court "is fundamental," and, aside from "correct[ing] inadvertent omissions from the record," it is subject only to narrow "exceptions" for "extraordinary cases." *Id.* at 1024. The exception *Lowry* discussed, *see id.*, and that was applied in *Johnson v. Rancho Santiago Community College District*, 623 F.3d 1011, 1020 n.3 (9th Cir. 2010), concerns not standing, but mootness. Unlike standing, which is measured based on facts at the time suit is filed, mootness does depend on later events; even if a plaintiff has standing when the suit is commenced, the case may be become moot, and a court may lose jurisdiction, based on subsequent developments. *See Davis*, 554 U.S. at 732-33 ("[I]t is not enough that the requisite interest exist at the outset. 'To qualify as a case fit for

federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)). The rule that appellate courts may consider events after a suit is filed in adjudicating whether a case has become moot provides no support for considering new developments in addressing standing.

*Pennell v. City of San Jose*, 485 U.S. 1 (1988), is similarly inapposite. *Pennell* arose from a suit in state court, *see* 485 U.S. at 4, where Article III's requirements do not apply. In part for that reason, the "record in th[at] case le[ft] much to be desired in terms of specificity for purposes of determining the standing of [the plaintiffs]." *Id.* at 8. The Court "strongly suggest[ed] that in future cases parties litigating in [the Supreme Court] under circumstances similar to those [in *Pennell*] take pains to supplement the record in any manner necessary to enable [the Court] to address with as much precision as possible any question of standing that may be raised." *Id.* That "suggest[ion]" to supplement the record with evidence that is relevant to standing provides no basis for considering evidence that does not concern facts as they existed at the time the complaint was filed and that therefore is irrelevant to standing.

2. Hawaii's new declaration also fails to cure the ripeness problem inherent in its reliance on prospective-student attendance because Section 2(c) is subject to "[c]ase-by-case waivers" in "appropriate * * * circumstances." Unless and until a

prospective student is found otherwise eligible for a visa, requests a waiver and is denied, the University's asserted injuries are not ripe because they assume "contingent future events that may not occur." Appellants' Br. 23 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Nothing in the declaration demonstrates that the prospective students were otherwise eligible for a visa and that, had they sought a waiver under Section 2(c), it would not have been granted.

3. Even if the second supplemental Dickson declaration could help Hawaii satisfy Article III, the declaration cannot possibly cure the separate prudential-standing defect with Hawaii's claims. As this Court has explained, "the power to expel or exclude aliens" is "a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control," and "[w]hen Congress delegates this plenary power to the Executive, the Executive's decisions are . . . generally shielded from administrative or judicial review." *Cardenas v. United States*, 826 F.3d 1164, 1169 (9th Cir. 2016) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), and *Andrade-Garcia v. Lynch*, 820 F.3d 1076, 1080-81 (9th Cir. 2016)). Under those principles, there is only a "limited exception to the doctrine of consular nonreviewability," permitting review of the denial of a visa solely "where the denial of a visa implicates the constitutional rights of American citizens." *Id.* (citation omitted). As we have explained, Hawaii has no rights here under the Establishment Clause or the Due Process Clause, and thus Hawaii cannot

maintain that the exclusion of aliens abroad violates the State's own constitutional rights, as *Cardenas* and Supreme Court precedent require. *See* Appellants' Br. 29-33.

Hawaii's new declaration regarding prospective students' plans to enroll at the University of Hawaii does nothing to alter that conclusion because it does not demonstrate that denying those prospective students visas "implicates the constitutional rights of" Hawaii itself. *Cardenas*, 826 F.3d at 1169. Nor may Hawaii assert third-party standing to raise rights of the students themselves, because aliens outside the country who lack a sufficient connection to it have no constitutional rights regarding their entry. *See, e.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). In short, the declaration's assertions about students' future plans cannot change the fact that Hawaii's claims are not reviewable because Hawaii cannot show that exclusion of those students violates Hawaii's own rights.

To the extent Hawaii seeks to assert a statutory challenge under 8 U.S.C. § 1152(a)(1)(A) to the exclusion of the prospective students described in the second supplemental Dickson declaration, that claim is likewise legally barred. A statutory challenge to the denial of a visa to an alien falls outside the "limited exception" to consular nonreviewability for claims asserting that denial of a visa infringes a U.S. citizen's own constitutional rights. *Cardenas*, 826 F.3d at 1169. Moreover, because

Section 1152(a)(1)(A) addresses only issuance of immigrant visas, it is likely irrelevant to the students described in the declaration, who presumably seek nonimmigrant student visas.

## CONCLUSION

For the foregoing reasons and for those stated in the defendants' merits briefs and at oral argument, the amended complaint should be dismissed for lack of standing.

Respectfully submitted,

/s/ Sharon Swingle
SHARON SWINGLE
(202) 353-2689
LOWELL V. STURGILL JR.
(202) 514-3427
Attorneys, Appellate Staff
Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 7520
Washington, D.C. 20530

MAY 2017

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2017, I electronically filed the foregoing response by using the appellate CM/ECF system.

I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Sharon Swingle
Sharon Swingle

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(g)(1), I hereby certify that the foregoing corrected motion complies with the type-volume limitation in FRAP 27(d)(2)(A). According to Microsoft Word, the motion contains 2,179 words and has been prepared in a proportionally spaced typeface using Times New Roman in 14 point size.

/s/ Sharon Swingle
Sharon Swingle